

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Christopher H. Gartman,<br><br>Debtor. | C/A No. 06-05307-JW<br><br>Chapter 7<br><br>ORDER |

This matter comes before the Court on Motion for Turnover (the "Motion"), filed by Michelle L. Vieira, Chapter 7 Trustee (the "Trustee"), seeking the turnover of portions of Debtor's tax refund for tax year 2006 pursuant to 11 U.S.C. § 542.[1] Debtor filed an objection to the Trustee's Motion. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(2)(E). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

1.  Christopher H. Gartman ("Debtor") is currently married. Debtor and his wife have lived separate and apart since November of 2006, but they have not filed for legal separation or divorce.

2.  During 2006, Debtor was the primary income generator for his family, earning approximately sixty-nine (69%) percent of the income.

3.  Debtor and his wife had a child during June of 2006. Debtor's wife was a student prior the birth of their child.

---

[1] Further references to the Bankruptcy Code, 11 U.S.C. § 101 et seq., shall be by section number only.

4.     A couple of months after the child was born, Debtor's wife began her employment. Debtor's wife earned approximately thirty-one (31%) percent of the couple's combined income for 2006, although she only worked for a few months.

5.     On November 20, 2006, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtor's wife has not sought relief under the Bankruptcy Code.

6.     Debtor did not disclose any possible tax refund due to him in his Schedule B.

7.     On December 22, 2006, Debtor testified at his § 341 meeting of creditors that he expected to receive a tax refund of approximately $1,000.00.[2] Despite being asked his current marital status, Debtor failed to disclose that he and his wife were separated.

8.     On or about February 5, 2007, Debtor and his wife filed a joint return for tax year 2006, and the couple subsequently received a combined (State and Federal) tax refund of $4,666.00.

9.     On February 15, 2007, the Trustee filed the Motion for Turnover of Property, whereby she seeks Debtor's share of the 2006 tax refund.

10.    On February 24, 2007, Debtor filed an Amended Schedule B indicating that Debtor anticipates receiving a $4,600.00 tax refund, but asserting that his share of that refund is only $2,200.00. Debtor also filed an Amended Schedule C, wherein Debtor seeks a $900.00 exemption for the anticipated tax refund.[3]

---

[2] Debtor testified that his 2005 tax refund was approximately $750.00; however, the Trustee presented evidence showing that the 2005 tax refund was actually $1,400.00.

[3] The Trustee has filed an objection to the exemption, which will be addressed by separate order.

## CONCLUSIONS OF LAW

The filing of a bankruptcy petition by Debtor resulted in the creation of an estate subject to administration by the Trustee for the benefit of Debtor's unsecured creditors. § 541(a). This estate is comprised of all legal or equitable interests of Debtor in property, including a tax refund, to the extent the overpayment was made prepetition. Campbell v. Woods (In re Woods), No. 97-80172-W, Adv. Pro. No. 97-80172-W, slip. op. at 5 (Bankr. D.S.C. Dec. 1, 1997). While the scope of "estate property" under § 541 is broad, a debtor's bankruptcy estate does not include a third-party's undivided interest in property co-owned with the debtor. In re Lock, 329 B.R. 856, 858 (Bankr. S.D. Ill. 2005); In re Smith, 310 B.R. 320, 322 (Bankr. N.D. Ohio 2004); In re Murray, 31 B.R. 499, 501-02 (Bankr. E.D.Pa. 1983).

While the parties do not dispute that some portion of the tax refund belongs to the estate, Debtor objects to the Trustee's allocation of the refund. Debtor argues that his wife has a one-half interest in the subject tax refund and therefore her portion is not property of the bankruptcy estate. The Trustee concedes that some portion of the tax refund belongs to Debtor's wife, but argues that the pre-petition portion should be allocated proportionally in accordance with the income produced by Debtor and his wife.[4] Thus, the issue to be determined is the amount of the tax refund that constitutes property of Debtor's estate.

---

[4] The Trustee seeks an order of the Court requiring Debtor to immediately turnover the sum of $2,865.39 to the Trustee. The Trustee arrived at the figure of $2,865.39 by multiplying the total refund amount of $4,666.00 by 324/365 (the total pre-petition days/ total number of days in the year) and then allocating the pre-petition portion proportionally in accordance with income produced. Accordingly, the Debtor's portion of the pre-petition tax refund would be $2,865.39, as he earned 69% of their total income, while the Debtor's wife's portion would be $1,287.35, as she earned only 31% of their total income.

3

This is an issue of first impression in this district. Bankruptcy courts in other districts have adopted three different approaches to determine the portion of a tax refund to which a debtor's estate is entitled when a joint tax return has been filed with a non-debtor spouse. The majority approach holds that the tax refund from a joint tax return should be allocated proportionally between the husband and wife in accordance with their respective tax withholdings during the relevant year. See In re Kleinfeldt, 287 B.R. 291, 292 (10th Cir. BAP 2002); In re Edwards, No. 05-23528, 2007 WL 41965, at *3 (Bankr. D. Conn. Feb. 2, 2007); In re Lock, 329 B.R. 856, 860 (Bankr. S.D. Ill. 2005); In re Smith, 310 B.R. at 323; In re WDH Howell, LLC, 294 B.R. 613 (Bankr. D.N.J. 2003); In re Lyall, 191 B.R. 78, 85 (E.D. Va. 1996); In re Gleason, 193 B.R. 387, 389 (Bankr. D.N.H. 1996). Similarly, other courts have allocated the joint tax refund proportionally in accordance with income produced, which is the approach proposed by the Trustee in this case. See In re Levine, 50 B.R. 587 (Bankr. S.D. Fla. 1985); In re Verill, 17 B.R. 652, 655 (Bankr.D.Md. 1982); In re Kestner, 9 B.R. 334, 336 (Bankr. E.D. Va. 1981); In re Colbert, 5 B.R. 646, 648-49 (Bankr. S.D. Ohio 1980). The minority approach, advocated by the Debtor, holds that joint tax refund should be allocated equally between the husband and wife without regard to tax withholdings or income produced. See In re Innis, 331 B.R. 784, 787 (Bankr. C.D. Ill. 2005); In re Barrow, 306 B.R. 28 (Bankr. W.D.N.Y. 2004); In re Aldrich, 250 B.R. 907 (Bankr. W.D.Tenn. 2000); Bass v. Hall, 79 B.R. 653, 656 (W.D. Va. 1987).

The common ground between all three approaches is that the determination of property rights in the assets of a debtor's estate is a matter of state law. Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18 (1979). Debtor argues that the Court

should apply the minority approach set forth in In re Aldrich, 250 B.R. 907 (Bankr. W.D. Tenn. 2000) and apply state domestic relations law to determine the allocation of the joint tax refund.[5] Debtor asserts that under South Carolina domestic relations law, the non-filing spouse would receive at least 50% pursuant to the equitable distribution approach provided by S.C. Code. Ann. § 20-7-471.[6]

The Court is not convinced that South Carolina domestic relations law applies in this case to determine the interests of Debtor and his non-filing spouse in the tax refund. The statutes providing for equitable distribution of the assets are applicable only when the parties are seeking a divorce or have commenced an action for separate support or maintenance. See S.C. Code Ann. §§ 20-7-471 – 20-7-473. Even if the domestic relations statutes did apply, these statutes do not provide for a per se 50% distribution. See Phillips v. Phillips, 290 S.C. 455, 458, 351 S.E.2d 178, 180 (Ct. App. 1986)(awarding wife 40% of joint tax refund as her equitable distribution). "Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects *each spouse's contribution to its acquisition*, regardless of which spouse holds legal title." Mallett v. Mallett, 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct. App. 1996)(emphasis added). The Court would have to consider a

---

[5] In the Aldrich case, the bankruptcy court for the western district of Tennessee held that one-half of the tax refund should be allocated to the non-debtor spouse, despite the fact that the non-debtor spouse produced no income during the taxable year. The court found that the totality of the circumstances existing in that case created equal ownership in the joint tax refund. Aldrich, 250 B.R. at 913. One factor the court found to be particularly significant was the valuable services performed by the wife as a homemaker. In addition, the court stated that it would be inconsistent and fundamentally unfair to find that the non-filing spouse had no right to the tax refund, when a non-filing spouse's liability for a joint federal income tax deficiency would be joint and several in the event the taxes were left unpaid. Id. at 912.

[6] S.C. Code § 20-7-471 provides: During the marriage a spouse shall acquire, based upon the factors set out in Section 20-7-472, a vested special equity and ownership right in the marital property as defined in Section 20-7-473, which equity and ownership right are subject to apportionment between the spouses by the family courts of this State at the time marital litigation is filed or commenced as provided in Section 20-7-472.

5

number of factors to determine the proper proportion to award Debtor's spouse, several of which would be inapplicable because no divorce or separate maintenance action has been filed.[7] S.C. Code Ann. §20-7-472. The policies underlying bankruptcy and divorce proceedings are sufficiently different to distinguish divorce cases from the case at bar. In divorce and separate maintenance proceedings, the family court focuses on the equitable distribution of assets between spouses. A bankruptcy court is primarily concerned with equitable distribution of assets among creditors of the debtor. Accordingly, the Court

---

[7] Section 20-7-472 provides that in making apportionment, the court must give weight in such proportion as it finds appropriate to all of the following factors:
(1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance or other marital action between the parties;
(2) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage; provided, that no evidence of personal conduct which would otherwise be relevant and material for purposes of this subsection shall be considered with regard to this subsection if such conduct shall have taken place subsequent to the happening of the earliest of (a) entry of a pendente lite order in a divorce or separate maintenance action; (b) formal signing of a written property or marital settlement agreement; or (c) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties;
(3) the value of the marital property, whether the property be within or without the State. The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence;
(4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets;
(5) the health, both physical and emotional, of each spouse;
(6) the need of each spouse or either spouse for additional training or education in order to achieve that spouses's income potential;
(7) the nonmarital property of each spouse;
(8) the existence or nonexistence of vested retirement benefits for each or either spouse;
(9) whether separate maintenance or alimony has been awarded;
(10) the desirability of awarding the family home as part of equitable distribution or the right to live therein for reasonable periods to the spouse having custody of any children;
(11) the tax consequences to each or either party as a result of any particular form of equitable apportionment;
(12) the existence and extent of any support obligations, from a prior marriage or for any other reason or reasons, of either party;
(13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage;
(14) child custody arrangements and obligations at the time of the entry of the order; and
(15) such other relevant factors as the trial court shall expressly enumerate in its order.
The court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal.

believes it would be inappropriate to apply equitable distribution to this case as there is no pending divorce proceeding and Debtor's wife is presently neither a creditor nor a debtor.

Debtor further argues that "it is inconsistent and fundamentally unfair that a non-filing spouse is jointly responsible and liable for a tax debt, yet cannot reap the well deserved tax refund." This Court recognizes that, a non-income producing spouse who signs a joint tax return is subject to joint and several liability for any tax owing under 26 U.S.C. § 6013(d)(3); however, this concern is alleviated by the fact that the non-income producing spouse has the option to file a separate return. See In re Smith, 310 B.R. 320, 323 (Bankr. N.D. Ohio 2004). Further, 26 U.S.C. § 6015 relieves an innocent spouse from any personal liability on a jointly filed tax return.

Several South Carolina statutes regarding property ownership and spousal liability for debts persuade the Court that ownership of the tax refund should be presumptively based on the parties' relative contribution to the overpaid tax, rather than equitable distribution. For example, under S.C. Code § 62-6-103, a joint bank account belongs, during the lifetime of the parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent. S.C. Code Ann. § 62-6-103. There is no special statute for joint bank accounts held by married persons. Thus, had Debtor and his wife deposited the funds into their joint account, it would logically follow that Debtor's ownership of those funds would be based on his net contributions to those funds, i.e., the extent of Debtor's overpayment of taxes.

South Carolina also has statutes specifically addressing the property rights of married women. See S.C. Code. Ann. § 20-5-10 *et seq*. Section 20-5-40 provides that "[a]ll the earnings and income of a married woman shall be her own separate estate and shall be governed by the same provisions of law as apply to her other separate estate." Furthermore, under S.C. Code Ann. § 20-5-30, a married woman's real and personal property is not subject to levy and sale for her husband's debts. Likewise, under S.C. Code § 20-5-60, a husband is not liable for the debts of his wife contracted prior to or after their marriage, except those debts for her necessary support and that of their minor children residing with her.

This Court finds that South Carolina law is most consistent with the majority's approach of dividing the tax return based on the parties' respective withholdings. This approach is easy to administer and results in a fair allocation of the joint tax refund. The Trustee's proposed approach of allocation based on the parties' respective incomes appears to produce a similar outcome but has the potential of resulting in an inequitable distribution when one spouse withholds substantially more than the other.

The burden of proof in a turnover action brought under § 542(a) lies with the party seeking turnover. In re Donnell, No. 05-53073, 2006 WL 3499423, at *7 (Bankr. W.D. Tex. Dec. 5, 2006). "Where the question is not qualitative, but quantitative, it logically follows that the party seeking turnover bears the burden of presenting evidence that, by a preponderance, shows the proportion of the property that rightly belongs to the estate." Id. The Court finds that the Trustee has met her burden of demonstrating that the allocation of the pre-petition portion of the tax refund should be calculated based on the

parties' respective incomes; however, the Court further finds that the more precise method is to calculate the figure based on the parties' respective withholdings.

Similar to the approach in In re Verill, this Court finds prorating a tax refund between the spouses' estates based upon each spouse's respective withholdings is presumptively fair and equitable. See In re Verill, 17 B.R. 652, 655 (Bankr. D. Md. 1982)(finding that prorating a tax refund between spouses' estates based upon each spouse's annual earnings is also a presumptively fair and equitable method); see also In re Taylor, 22 B.R. 888, 891 (Bankr. N.D. Ohio 1982)(leaving it to the trustee to propose a formula for a fair allocation of the tax refund, which formula, absent proof to the contrary, should be presumed to be fair and equitable). This approach is further commendable because it is a more efficient and precise method. However, a Debtor should be able to obtain a different allocation of the tax refund based upon the totality of the circumstances where he presents evidence sufficient to overcome this presumption. Debtor here argues that the contributions of his wife to the family justify an even split of the tax refund. Debtor testified that his wife stayed home to take care of their newborn child. Debtor's testimony revealed, however, that Debtor's wife was a student for the first half of 2006 and then stayed home with the child for only a short period before returning to work in the fall of 2006. Debtor presented no other evidence of his wife's contributions to the family to support his claim that the tax refund should be divided evenly. It would be inexact speculation for the Court to assume the value of the contributions of a stay-at-home parent without such evidence. As the evidence of a spouse's contributions to the family is particularly within the knowledge of a debtor and the non-filing spouse, the debtor should have the burden of coming forward with such

9

evidence, not the Trustee. Accordingly, considering the evidence presented, the Court finds that the pre-petition portion of the tax refund should be divided based upon each spouse's respective withholdings.

The Trustee's previous determination that the pre-petition portion of the joint tax return according to the pro-rationing method was $4,152.74 appears correct.[8] Therefore, the Trustee is entitled to receive $4,152.74 less the percentage of withholdings contributed by Debtor's wife.[9]

Accordingly, it is hereby

ORDERED that the Trustee's Motion for Turnover is granted in part and denied in part.[10] Debtor's objection to the Motion for Turnover is overruled. Debtor shall turn over to the Trustee the portion of $4,152.74 constituting the percentage of withholdings for tax year 2006 contributed by Debtor. Turnover shall be within ten (10) days from the entry of this Order.

AND IT IS SO ORDERED.

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 27, 2007

---

[8] Only the portion of Debtor's joint tax refund representing pre-petition withholdings can be a valid source of a claim by the bankruptcy estate. "The pre-petition portion of the refund essentially represents excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made." Barowsky v. Serelson (In re Barowsky), 946 F.2d 1516, 1518 (10th Cir. 1991). This Court has previously found that, as a practical matter, the most efficient method to determine which part of the refund is pre-petition and property of the estate is calendar day pro-rationing. Campbell v. Woods (In re Woods), No. 96-76877-W, Adv. Pro. No. 97-80172-W, slip. op. at 5 (Bankr. D.S.C. Dec.1, 1997).

[9] Evidence regarding the amount of withholdings contributed by Debtor and Debtor's wife was not formally presented to the Court, but should be available from the Debtor's 2006 tax return.

[10] Debtor's other requests for relief contained in his objection to the Motion for Turnover are denied.