**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Christopher H. Gartman,<br><br>Debtor. | C/A No. 06-05307-JW<br><br>Chapter 7<br><br>ORDER |

FILED at ___O'clock & ___min ___M
MAR 30 2007
United States Bankruptcy Court
Columbia, South Carolina (B)

ENTERED MAR 30 2007
R. S. S.

This matter comes before the Court on the objection of the Chapter 7 Trustee (the "Trustee") to Debtor's claim of exemption regarding a tax refund. Debtor filed the claim of exemption on February 24, 2007, and the Trustee filed a timely objection on March 15, 2007. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law:[1]

**FINDINGS OF FACT**

1. On November 20, 2006, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtor did not disclose any possible tax refunds due to him in his original Schedule B filed with the petition. Debtor also did not inform the Trustee prior to the meeting of creditors that that he was entitled to a tax refund or that his Schedule B was incorrect.

2. On December 22, 2006, Debtor admitted at the § 341 meeting of creditors, in response to questioning by the Chapter 7 Trustee, that he expected to receive a tax refund of approximately $1,000.00. Debtor also stated that he received a federal tax refund of approximately $750.00 for tax year 2005. Debtor further revealed that he and

---

[1] To the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent that any Conclusions of Law constitute Findings of Fact, they are so adopted.

his non-filing spouse had a child during tax year 2006. Despite being asked his current marital status, Debtor failed to disclose that he and his wife were separated.

3. On or about February 5, 2007, Debtor and his wife filed a joint return for tax year 2006, which indicated a combined (State and Federal) tax refund of $4,666.00. Debtor did not advise the Trustee of the tax refund or amend his schedules to indicate the existence of the refund at that time. Thereafter, Debtor and his wife received the tax refund of $4,666.00.

4. On February 15, 2007, the Trustee filed a Motion for Turnover requesting turnover of the undisclosed tax refund in the amount of $2,865.39.[2]

5. On February 24, 2007, Debtor filed an Amended Schedule B indicating that he anticipates receiving a $4,600.00 tax refund, but asserting that his share of the refund is only $2,200.00. Debtor also filed an Amended Schedule C, seeking a $900.00 exemption for the anticipated tax refund.

6. At the hearing on the Trustee's Objection to Amended Schedule C Claim of Exemption and Motion for Turnover,[3] Debtor admitted that his 2005 federal tax refund was actually approximately $1,400.00. He further admitted that he and his wife were separated at the time of the § 341 meeting.

## CONCLUSIONS OF LAW

When a debtor files a petition for relief under the Bankruptcy Code, an estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[4] Section 521(a)(1)(B) requires a

---

[2] The Trustee's Motion for Turnover has been addressed by separate order.
[3] The parties agreed to argue the objection to the claim of exemption at the hearing on the Trustee's Motion for Turnover.
[4] Further references to the Bankruptcy Code will be by section number only.

2

debtor to file a schedule of assets and liabilities, a schedule of current income and current expenditures and a statement of the debtor's financial affairs. "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate because they are exempt from execution." In re Icke, C/A No. 05-36938, 2006 WL 2860809, at *2 (Bankr. S.D.Ill. Oct. 4, 2006) (citing In re Yonikus, 974 F.2d 901, 904 (7th Cir. 1992)). The bankruptcy Schedules are carefully designed to elicit information necessary to the proper administration and adjudication of the case. See McDow v. Geddings (In re Geddings), C/A No. 05-02050-W, Adv. Pro. No. 05-80183-W, slip op. at 6 (Bankr. D.S.C. Jan. 27, 2006). "Bankruptcy is a give-and-take process, and, in order for Debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Trustee." In re Hooper, 274 B.R. 210, 220 (Bankr. D.S.C. 2001).

Initially, Debtor neither disclosed the existence of the anticipated tax refund nor claimed an exemption for this refund. Fed. R. Bankr. P. 1009(a), however, provides that Debtor has the right to amend their petition at any time before the case is closed. Debtor has filed an amended schedules disclosing the tax refund and seeking a $900.00 exemption for such refund pursuant to S.C. Code Ann. § 15-41-30(5).[5] While under Fed.

---

[5] Under § 522(b)(1), a debtor may claim that some of his real and personal property is exempt from the estate. Because South Carolina has opted out of the federal exemption scheme provided under § 522(d), Debtor seeks an exemption pursuant to S.C. Code Section 15-41-30, which provides in pertinent part:

> The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding:

> (5) The debtor's aggregate interest in cash and other liquid assets to the extent of a value not exceeding one thousand dollars, except that this exemption is available only to an

3

R. Bankr. P. 1009 it appears that the debtor's has the absolute right to amend, a judicially created exception to this rule has evolved whereby a court may deny amendment of the schedule of exemptions upon a showing that the debtor has acted in bad faith or concealed property, or if the amendment would prejudice creditors or third parties.[6] See Yonikus, 996 F.2d at 872; Lucius v. McLemore, 741 F.2d 125, 127 (6th Cir. 1984); In re Doan, 672 F.2d 831, 833 (11th Cir. 1982); In re Hamlett, 304 B.R. 737, 742 (Bankr. M.D.N.C. 2003); In re Grogan, 300 B.R. 804, 807 (Bankr. D. Utah 2003); Icke, 2006 WL 2860809 (Bankr. S.D.Ill. Oct. 4, 2006); In re Cooper, C/A No. 03-00900-W, slip. op. at 3 (Bankr. D.S.C. May 5, 2003). The Court must examine the totality of the circumstances in order to determine whether a debtor has engaged in bad faith of the kind sufficient to result in the loss of his right to amend his exemption claims. See In re Bauer, 298 B.R. 353 (8th Cir. B.A.P. 2003); In re Evinger, 354 B.R. 850 (Bankr. W.D. Ark. 2006); In re Colvin, 288 B.R. 477 (Bankr. E.D. Mich. 2003).

The Trustee asserts that Debtor's failure to initially disclose the tax refund, the timing of the amendment– after the Trustee had discovered the existence of the tax refund and after she filed a Motion for Turnover– and Debtor's dishonesty regarding the tax refund and his marital status warrant the denial of the exemption in this case.

In response, Debtor argues that when he filed his original schedules he was unsure how much of a tax refund he would receive because he had not yet received his W-2 statements. However, when questioned by the Trustee in December regarding whether he expected to receive a tax refund he testified that he expected to receive a refund of

---

individual who does not claim a homestead exemption. The term "liquid assets" includes deposits, securities, notes, drafts, unpaid earnings not otherwise exempt, accrued vacation pay, refunds, prepayments, and other receivables.

[6] The issue of prejudice to creditors or third parties has not been raised by the parties in this case.

4

approximately $1000.00, despite the fact that he had still not received his W-2 statements.[7] Debtor did not amend Schedules B and C to indicate the anticipated refund and exemption immediately following the § 341 meeting of creditors, nor did he amend his schedules following his completion of his federal and state tax returns in early February. It was not until after the Trustee filed her Motion for Turnover on February 15, 2006 that debtor took action to amend his schedules to disclose the tax refund and seek an exemption for the refund. Debtor was also untruthful with the Trustee at the § 341 meeting of creditors regarding the amount of his 2005 tax refund and his marital status, which could directly affect the refund.

The Court finds that Debtor's contention that he did not know whether he would receive a refund is not credible. It would be reasonable for Debtor to assume that he would receive a tax refund for tax year 2006, as he received a significant refund in the previous year and had a new child to claim as a dependent for 2006. Having considered the evidence presented, the credibility of the testimony, and the arguments of counsel, the Court finds that the totality of the circumstances indicates that Debtor has demonstrated a reckless disregard for his obligation to disclose all of his assets and acted in bad faith. See Cooper, slip op. at 3 (holing "a debtor who fails to fully comply with the disclosure requirements imposed by the Code faces the penalty of having to forfeit the right to claim an exemption in the concealed property.");[8] In re Robinson, 292 B.R. 599, 609 (Bankr. S.D. Ohio 2003). The Trustee should not have to ferret out the truth about Debtor's assets and financial affairs. Geddings, slip op. at 6. For these reasons, Debtor should not be entitled to claim an exemption in his tax refund. Accordingly, it is hereby

---

[7] Debtor testified that he received his W-2 statements sometime in late January.
[8] This result is particularly appropriate where, as here, there are limited assets of the estate.

5

ORDERED that the Trustee's Objection to Amended Schedule C Claim of Exemption is sustained. Debtor's claim for a $900.00 exemption in his tax refund is denied.

AND IT IS SO ORDERED.

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 30, 2007